Tatlow v. Bacon.

No. 19,460.

MARION A. TATLOW, *Appellee*, v. W. E. BACON and BERT RUCKER, *Appellants*, et al.

SYLLABUS BY THE COURT.

1. EXCHANGE OF LAND—*Conspiracy to Defraud—Sustained by the Evidence*. The evidence held to support a finding of a conspiracy on the part of the defendants to defraud the plaintiff of his land by inducing him to exchange it for a worthless deed.

2. SAME—*Error in Verdict and Findings—Returned to Jury for Further Deliberation*. Where the verdict and special findings returned by a jury show an inconsistency in amounts, apparently due to a mistake in computation, no error is committed in calling their attention to the matter and sending them out for further deliberation.

Appeal from Shawnee district court, division No. 2; GEORGE H. WHITCOMB, judge. Opinion filed June 12, 1915. Affirmed.

*J. B. Larimer*, of Topeka, for appellant W. E. Bacon.

*J. M. Stark*, of Topeka, for appellant Bert Rucker.

*Lee Monroe, James A. McClure*, and *C. M. Monroe*, ` all of Topeka, for the appellee.

The opinion of the court was delivered by

MASON, J.: Marion A. Tatlow conveyed his interest in a farm in Morris county in exchange for a deed to a tract of land in Missouri, which did not in fact pass any title. He brought an action against W. E. Bacon and Bert Rucker, alleging that he had been induced to part with his property by their false representations, and asking damages on that account. He recovered a judgment for $3117, from which they appeal.

The defendants' version of the transaction is substantially as follows: They were real-estate brokers, living in Topeka. Late in April, 1911, a stranger called at the office of Rucker and introduced himself as H. A. Miller, saying he had some land to dispose of. Rucker described him as shabbily dressed, dissipated and nervous, looking like a "boozer." Miller left with Rucker two papers. One was in the form of a special warranty deed, dated February 16, 1909, describing a half section of land in Crawford county, Missouri, signed and acknowledged by C. W. Allendorph, the name of the grantee being left blank. The other paper purported to be an abstract of title, indicating a patent from the United States to Timothy Hill, and a deed from him to Allendorph, the latest date upon it being July 24, 1909. Miller left these papers with Rucker, agreeing to pay him $100 if he would arrange a trade for the Missouri land, and saying that he was willing to take incumbered property, although his own was clear. Rucker learned through Bacon that Tatlow had a tract of 160 acres, against which there was a lien of $6800, which he might be willing to exchange. Rucker reported this to Miller, who instructed him to go ahead and make the deal. Bacon took the papers to White

City, where the exchange was effected, Tatlow assigning to Miller the contract under which he held his land, and receiving in return the abstract and the blank deed to the Missouri land, in which his name was written as grantee, by one of two local real-estate agents who were acting in his behalf. Bacon gave the assigned contract to Rucker, who told Miller he would deliver it only on payment of his commission. Miller said he did n't have the money, and offered to sell the contract to Rucker. After some haggling Rucker bought the contract for $150 in addition to his commission. Rucker paid Bacon $50 for his services. Bacon also received $100 from Tatlow's agents, being half of their commission. Through Bacon Rucker then traded the Morris county land to E. C. Ball for a forty-acre tract north of Topeka, which he afterwards sold in parcels, realizing $3950. He paid Bacon $100 commission on this deal, paid a mortgage on the property of $1095, and paid $510.20 boot. He caused the Tatlow contract to be assigned by Miller directly to Ball, and took the title to the Ball tract in the name of J. C. Coke, an employee in his office, as a matter of convenience. Neither Rucker nor Bacon had any suspicion that there was anything wrong with the title to the Missouri land until the following October. Rucker afterwards made several trips to Kansas City trying to locate Miller, but could not find him.

The jury found specifically that the defendants conspired to defraud the plaintiff; that they knew or had good reason to believe that the deed signed by Allendorph did not convey a good title; that Rucker willfully and fraudulently furnished Bacon with the deed and abstract to be used in inducing Tatlow to trade; and that Bacon falsely represented to him that the deed conveyed a good title to the Missouri land. The defendants maintain that the evidence did not justify these findings, nor the general verdict.

According to the testimony of Tatlow, Bacon told him that the deed and title were good; that the Mis-

souri land had tie timber on it and was worth at least
$4800; that he represented an old friend who had ob-
tained the deed from Allendorph; that the deal had to
be closed at once because his friend was going to Cali-
fornia the next day; in reply to a doubt suggested by
Tatlow as to the validity of the deed he said that his
friend could n't afford to be connected with any crooked
deal. Another witness testified that Bacon said his
friend owned the land; another that he said the deed
and abstract had been examined and were all right.
Bacon denied the statements attributed to him, but in
view of the jury's findings the testimony must be re-
garded as true for the purposes of the present hearing.
His representation that the deed would convey a good
title was of the utmost importance, because even if the
abstract had been otherwise perfect, it lacked nearly
two years of being brought down to date, so that the
buyer necessarily had to rely upon the good faith of
the person with whom he was dealing. His remark
concerning the reliability of his friend, who he said
had obtained the deed from the grantor, fairly implied
that he had sufficient personal knowledge of the matter
to vouch for there being no fraud in the transaction.
The instrument which has been referred to as an ab-
stract of title hardly merits that name. It included no
statement that it showed all the conveyances affecting
the land. A vague certificate was attached, signed by a
person who described himself as a "title examiner,"
who is apparently the same person who as a notary
public for Jackson county, Missouri, acknowledged the
Allendorph deed. It is difficult to believe that any one
having any considerable experience in buying and sell-
ing real estate could regard the blank deed and ab-
stract, when produced by an entire stranger, as af-
fording any presumption of ownership of the land
described. The assignment of the contract for the
Morris county land directly from Miller to Ball, the
smallness of the sum alleged to have been paid to

Miller, the taking title to the Ball tract in the name of some one else for the benefit of Rucker, and the failure to find Miller, are all circumstances to be weighed with others in determining the question of good faith.  Explanations were offered of these matters, but their effect was for the determination of the jury.  Allendorph's deposition was taken by the plaintiff.  He testified that when he made the deed in question the name of W. F. Nine was written in as grantee.  The deed shows a yellowish stain where the name of Tatlow, as grantee, is now written.  Tatlow (as well as Bacon and Rucker) testified that this stain was not visible when he received the deed.  The acid, or whatever produced the stain, caused a slight roughening of the surface of the paper, and a close inspection makes it quite obvious that Tatlow's name was written in after this had taken place.  The evidence, as a whole, warranted an inference that Rucker and Bacon understood that the papers delivered to Tatlow were valueless and cooperated to defraud him of his land.

The defendants complain of the refusal of an instruction that in order to recover the plaintiff must have relied wholly upon the false representations made to him by Bacon.  Partial reliance upon them was sufficient.  (20 Cyc. 41; 14 A. & E. Encycl. of L. 114.)

Rucker complains of an instruction to the effect that he was responsible for any misrepresentations made by Bacon as his agent, whether he knew of them or not, if he accepted the benefit of the deal.  This seems to state a sound general principle applicable to the case, but a close inquiry into the subject is needless, for the specific finding that the defendants conspired to commit a conscious fraud makes it wholly immaterial.  Bacon claims that he was a middle man—a mere means of communication between Rucker and Tatlow; but the jury found to the contrary, upon sufficient evidence.  As already suggested, the instructions given and refused regarding the respective liability of principal and agent are

rendered immaterial by the finding that a conspiracy existed between them.

In behalf of the defendants it is argued that the deed and abstract on their face were sufficient to put the plaintiff on his guard. The device employed was indeed a shallow one, such as perhaps ought not to have deceived an experienced, intelligent and cautious person. But the defendants can take no advantage from this, for Bacon's alleged misrepresentations were calculated to reassure the plaintiff and disarm suspicion. (20 Cyc. 34; 14 A. & E. Encycl. of L. 123.) An argument is made that a new trial should be granted because of perjury and subornation of perjury by the plaintiff. He testified that he executed the assignment of his land contract in blank, and that Miller's name as assignee was written in afterwards—that Miller's name was not disclosed to him. Bacon contradicted this, and said the assignment was filled in by the notary public who took the acknowledgment. He may have been right, although the handwriting seems dissimilar, but that would not compel the conclusion that Tatlow acted corruptly. The notary, who was one of the plaintiff's agents, testified that Bacon wrote the name of Tatlow, as grantee, in the Allendorph deed. The writing appears to be that of the notary. But the misstatement was not necessarily corrupt.

Complaint is made of the admission of evidence regarding the record title of the Missouri land, and of an explicit instruction that the plaintiff obtained nothing by the Allendorph deed. It is so clear that Allendorph had nothing to convey that the matter is not worth discussing. An effort is made to show that the jury overvalued the Morris county land, but their estimate was supported by positive testimony.

A new trial is also asked because of these facts: The jury at first returned a verdict for $2117, and findings that the Morris county farm was worth $10,000, and the plaintiff's interest in it $1200. The judge called

their attention to the inconsistency and sent them out for further deliberation. Their final report fixed the verdict at $3117 and the value of the plaintiff's interest at $3000. The defendants maintain that this amounted to an instruction that the special findings must be consistent with the general verdict, which has been held to be erroneous. (*Dry-Goods Co. v. Kahn,* 53 Kan. 274, 36 Pac. 327; *Railroad Co. v. Burrows,* 62 Kan. 89, 61 Pac. 439.) There was no dispute as to the amount ($6800) Tatlow or his assignee had to pay in order to get a complete title—the controversy was over the value of the farm. When the jury fixed that at $10,000 the value of the plaintiff's interest and the amount he was entitled to recover became a mere matter of computation, in which the jury obviously made an error. It was proper that the court should call their attention to it, and that they should correct it.

A new trial was asked on the ground of newly discovered evidence. This was chiefly that of persons who overheard Bacon telephoning to some one at White City that he would bring the papers there for examination and approval. An affidavit of W. F. Nine was also produced, to the effect that Allendorph delivered the deed to him in blank, and that he disposed of it to some person whose name he could not recall. The additional evidence does not impress us as vital, and we see no reason for disturbing the decision of the trial court, which was better able to judge of its importance.

The plaintiff also assigns error, and asks that the judgment be increased by the allowance of interest. The wrong complained of by Tatlow is the fraud of the defendants in causing him to lose his farm. He was not required to show that they derived any benefit from their conduct. (*Hewey v. Fouts,* 92 Kan. 268, 140 Pac. 894.) It was not shown that they profited to the extent of the amount of recovery awarded. Therefore this falls within the class of cases in which interest is denied. (*Grain Co. v. Railway Co.,* 96 Kan. 1.)

The judgment is affirmed.