No. 22,845.

J. C. LILLEY, *Appellee,* v. THE STERLING OIL AND REFINING COMPANY, *Appellant.*

SYLLABUS BY THE COURT.

1. CORPORATE STOCK — *Nonnegotiable Paper* — *Purchaser Takes It Burdened with All Its Vices and Defects.* One who buys or contracts to buy stock in a corporation does not take it freed of its infirmities according to the rules of commercial paper acquired in due course; he merely takes such legal and equitable rights in the stock as his vendor has to bestow; and although the buyer may be ignorant of the equities and burdens which inhere in the stock, his ignorance does not relieve the stock therefrom, nor enable him to acquire it discharged of any vice or defect which inheres in it.

2. SAME. The secretary of a corporation in charge of its stock book fraudulently and without consideration issued to himself 232,500

shares of the corporation's capital stock. In conformity with an order of the state charter board the corporation set about the task of recalling and canceling this illegal issue. Part of this issue, a certificate for 5,000 shares, had passed from hand to hand until it was purchased by plaintiff upon a contract that he was not to pay for it until it had been duly transferred on the books of the company and a new certificate therefor issued to him. Plaintiff did not know of the fraud in its original issue, nor that any vice or defect inhered in the stock. He sent in the old certificate to the corporation for transfer. The corporation promptly canceled and suppressed it and declined to issue a new certificate therefor. Plaintiff sued the corporation in conversion for the market value of *bona fide* stock of the company. *Held,* that he purchased the stock burdened with its vices and defects and cannot recover.

Appeal from Sedgwick district court, division No. 2; THORNTON W. SARGENT, judge. Opinion filed April 9, 1921. Reversed.

*L. P. Brooks,* of Wichita, for the appellant.

*John Madden, John Madden, jr.,* and *C. B. Dunn,* all of Wichita, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action for the alleged conversion of certain shares of stock issued by the defendant company and which it canceled and suppressed when the certificate was presented to it for transfer.

One Eugene Jackson, secretary of the defendant, the Sterling Oil & Refining Company, who had custody of its stock book, issued to himself, without compensation and without authority, 232,500 shares of its capital stock. The stock was of a character which could only be lawfully issued with the sanction of the state charter board ("Blue-sky" Law, Gen. Stat. 1915, § 9458, *et seq.*), and no license for such issue had been granted.

This violation of law came to the attention of the charter board and it peremptorily ordered that the unlawful issue be canceled. In time the defendant company succeeded in recovering and canceling all this issue except the 5,000 shares which are the subject of this lawsuit.

Jackson, the secretary, had assigned the stock in question to one Murphy, who in turn passed it on to one Robert H. Smith

who held it in trust for I. A. O'Shaughnessy, and the latter sold it to the plaintiff, J. C. Lilley, for $3,000 upon a contract that Lilley was not to pay for it until it had been transferred on the books of the defendant company.

Jackson, the secretary, had issued the stock to himself on February 24, 1917. On April 25, 1917, the charter board made its order touching its cancellation. On July 12, 1917, the bargain between plaintiff and O'Shaughnessy was made; and on July 14, 1917, Lilley's agent presented the old certificate to the company for transfer. The defendant canceled the old certificate and refused to issue a new certificate showing its transfer to Lilley.

Hence this lawsuit.

The trial court made findings of fact and conclusions of law, and gave judgment for plaintiff for the market value of *bona fide* stock of the company at the time of the alleged conversion of the stock in question.

The defendant company appeals.

The trial court found the fact to be that plaintiff did not know and that his vendor, O'Shaughnessy, did not know that the charter board had ordered this stock to be canceled, and that plaintiff did not know that it had been issued without consideration. From this finding of fact, and other facts in evidence, the trial court drew the legal deduction that plaintiff was a purchaser in the usual course of business and in good faith and therefore that the plaintiff was entitled to recover from the defendant company, notwithstanding the original issue of the stock had been a fraud upon the company. This deduction was erroneous. Fraudulent issues of stock do not receive an immunity bath, like commercial paper, when they pass from hand to hand in the usual course of trade. Each succeeding purchaser gets just what his vendor legally and equitably had to sell and no more. (*Mitchell v. Beachy,* 104 Kan. 445, 179 Pac. 265.) In *Hammond v. Hastings,* 134 U. S. 401, 33 L. Ed. 960, 963, it was said:

" 'No person, therefore, can acquire a legal title to any shares, except under a regular transfer, according to the rules of the bank; and if any person takes an equitable assignment, it must be subject to the rights of the bank, under the act of incorporation, of which he is bound to take notice.'

Lilley v. Oil and Refining Co.

"Repeated efforts have been made to have certificates of stock declared negotiable paper, but they have been unsuccessful. Such a certificate is not negotiable in either form or character; and like every nonnegotiable paper, whoever takes it does so subject to its equities and burdens; and though ignorant of such equities and burdens his ignorance does not relieve the paper therefrom, or enable him to hold it discharged therefrom."

(See, also, Rose's notes to *Hammond v. Hastings,* supra, 33 L. Ed. 1176; 10 Cyc. 629, and 36 Cyc. 1310 *et seq.*)

Another conclusion of law which was reached by the trial court reads:

"3. The action of the Blue-sky Board in ordering the cancellation of Certificate No. 964 and other certificates of stock was non-judicial and is not operative as against J. C. Lilley."

It may be conceded that the action of the charter board was not judicial, but it was nevertheless proper for the board to take such action. The order outlined a procedure which indicated what would stay its hand from instituting proceedings through the attorney-general or county attorney to correct the corporate abuse which inhered in the unauthorized and fraudulent issue of stock, and this stock was part of that illegal issue. (Gen. Stat. 1915, § 2182; Gen. Stat. 1915, § 9458 *et seq.*)

This court is also impressed with the view that the bargain between plaintiff and O'Shaughnessy was only a conditional sale—the condition being that plaintiff would only be bound if the stock certificate could be and would be transferred on the books of the company. As the transfer was never made and under the circumstances the defendant company could not be compelled to make it, or otherwise to acknowledge the validity of this stock, the plaintiff Lilley never became its owner; and so far as he was concerned there was no conversion. (*Faulkner v. Bank,* 77 Kan. 385, 94 Pac. 153.)

It follows that the judgment of the district court must be reversed, and as the conclusion here reached disposes of the whole controversy between these litigants the trial court should be instructed to enter judgment for defendant.

It is so ordered.