No. 30,173.

G. C. Hutson, an Incompetent Person, by George Templar, His Guardian, *Appellee*, v. (Imperial Royalties Company, a Common-law or Express Trust; John E. Horn, E. S. Horn and J. O. Bland, Trustees, W. R. Hamm and John Randolph Calhoun, *Defendants*), Imperial Royalties Company, *Appellant*.

(5 P. 2d 825.)

Opinion filed ·December 12, 1931.

*James McDermott, Richard B. McDermott,* both of Winfield, *Bennett R. Wheeler, S. M. Brewster, John L. Hunt, Virgil V. Scholes* and *Margaret McGurnaghan,* all of Topeka, for the appellant.

*O. Renn* and *George Templar,* both of Arkansas City, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: This is an action in two counts by the guardian of an incompetent person against the Imperial Royalties Company, its three trustees and two individuals, to recover the value of preferred and common stock in the Imperial Royalties Company procured from the incompetent owner thereof by entering into a conspiracy to defraud him out of it by false and fraudulent representation without paying him anything therefor.

The first count relates to the procuring from the plaintiff's ward in December, 1928, two certificates of such stock for 3,750 shares; the second count relates to the procuring from him in January, 1929, three weeks later, the balance of his stock in the company, consisting of 11,763 shares preferred in two certificates and 5,881 shares common stock in two certificates. The judgment asked on the second count was for $26,466 with interest.

No service was had on any of the defendants except the company and W. T. Hamm. The answer of the defendant company was a verified general and special denial admitting only its organic existence. The verdict of the jury was for the plaintiff against the defendant company only and on the second count of the petition for $32,091.99. The jury also answered the following special questions:

"1. Was there a conspiracy entered into at or about the time alleged in the plaintiff's petition by the defendants or any of them for the purpose of defrauding the said Hutson out of his shares of interest or stock in the Imperial Royalties Company as charged in said petition? A. Yes.

"2. If you answer question No. 1 in the affirmative, state when and where such conspiracy was entered into and the names of the persons participating in the formation of such conspiracy.

"(a) When? On or about blank day of December, 1928.

"(b) Where? Place unknown.

"(c) Names of persons? John E. Horn, E. S. Horn, J. O. Bland, of the Imperial Royalties Co., and John Randolph Calhoun.

"3. If you answer the first question in the affirmative and also find that the Imperial Royalties Company entered into such conspiracy and participated therein, then state what act or acts of the Imperial Royalties Company constituted participation in such conspiracy and the consummation thereof, and the names of the persons so participating on behalf of the Royalties Company.

"(a) State act or acts: A. By transferring stocks after they had been notified a fraud had been committed.

"(b) Names of persons participating: John E. Horn, E. S. Horn and J. O. Bland, trustees.

"4. If you answer the first question in the affirmative and further find that the Imperial Royalties Company participated or entered into such conspiracy, state with what one of the defendants it conspired or participated in the attempt to defraud. A. John Randolph Calhoun.

"5. Did Calhoun or Hamm ever communicate with the Imperial Royalties Company concerning the matter of obtaining the interests of the said Hutson in the Imperial Royalties Co.? A. John Randolph Calhoun, yes.

"6. If you answer the above question in the affirmative, state when and where and with what representative of the Imperial Royalties Company such communication was had. A. We do not know.

"7. When did the Imperial Royalties Company first learn that the plaintiff had assigned in blank and delivered his certificates of interest in the Imperial Royalties Company to Calhoun? A. When they received certificates stock.

"8. At the time the Imperial Royalties Company transferred on its books stock certificate No. 23,178 and stock certificate No. 11,473 did such company have any knowledge that it was claimed by Hutson that he had been defrauded out of such shares or certificates? A. No."

The defendant company appeals, assigning forty-eight errors, which are more concisely embraced in its brief in the following six questions involved in the appeal.

"1. There was no evidence introduced in the trial of the case to support the findings of fact and the general verdict and the judgment of the court;

"2. The instructions of the court were erroneous and such instructions were not confined to the issues presented by the pleadings;

"3. There was misconduct on the part of counsel representing the appellee;

"4. Numerous errors were committed by the trial court in the admission of testimony;

"5. Various errors were committed by the trial court during the trial of the case in its rulings;

"6. Trial court erred in overruling the various motions made by the appellant, Imperial Royalties Company . . ."

The first point presented by the appellant in its argument is under the third heading of the questions involved, but it comes first in the order of the trial. It is the misconduct on the part of counsel representing appellee in his opening statement in that it was in the nature of an argument and traveled outside the issues and recited matters for which no evidence was offered. A careful reading of the sixteen pages of this statement, as found in the typewritten transcript, compels the conclusion that it was more nearly like a closing argument than an opening statement. The court twice sustained objections made to parts of it, which were then withdrawn, and once admonished counsel. Three objections were, we think, properly overruled. As to the statements being within the issues, we think they were within the broad scope necessarily afforded where fraud and misrepresentations are the issues. Many, many statements were made in this opening statement covering transactions, data and circumstances which a careful search of the abstract, counter abstract and transcript fails to reveal. The experience of every attorney is that often his realization in the way of evidence actually introduced falls short of what he in his zeal and enthusiasm expected it to be, and sometimes his better judgment dictates the propriety of omitting some of the evidence he had fully intended to introduce. But these occasional failures and intentional omissions should not make a very wide spread between what the evidence is expected to show and what it later does show. If there is much of such expected evidence omitted in the proof, as there appears to be in this case, the natural conclusion follows that there was a purpose in making the preliminary statement broader than the proof, and it might often be prejudicial in its effect. However, in this case, without approving the practice, we cannot say it was prejudicial. Under our code courts should disregard "irregularities, which do not affirmatively appear to have prejudicially affected the substantial rights of the party complaining, where it appears upon the whole record that substantial justice has been done by the judgment." (R. S. 60-3317.) If substantial justice has not been done in the case, such extended and enlarged statement might well be considered as prejudicial. (*Hamilton v. Railway Co.*, 95 Kan. 353, 148 Pac. 648; *Long v. Railroad Co.*, 114 Kan. 40, 216 Pac. 1079; and *Taggart v. Taylor*, 128 Kan. 330, 278 Pac. 21.)

The next nine propositions presented in appellant's brief are concerning the admission of certain items of testimony over the objections of the appellant.

The testimony of the plaintiff tended to show that the plaintiff's ward was a farmer about seventy years of age, living with his wife and family about seven miles south of Arkansas City in 1928 and 1929, and had accumulated quite a little land and other property. That he had a paralytic stroke in August, 1928, was much affected by it thereafter and was adjudged an incompetent the latter part of January, 1929, and plaintiff was then appointed his guardian. That W. T. Hamm was a neighbor and friend of this farmer, and in June, 1928, Hamm and a man by the name of Platt in charge of the disposal of the stock of the defendant company in the territory of Kansas, called on this farmer Hutson and sold him a large quantity of the preferred and common stock of the Imperial Royalties Company. Another sale was made by them to Hutson in July and a third in November of the same year. Hamm was said to have received a commission of 15 per cent for his services in making these sales. The stock certificates were issued by the company and delivered to Hutson. On December 21, 1928, this same neighbor Hamm and a man by the name of Calhoun called on Hutson and told him of the decline in the price and worth of stock in the Imperial Royalties Company, which had up to that time been paying Hutson dividends of about $200 per month, and succeeded in persuading him to exchange a part of his stock in that company for the promise of $4,000 in cash and a large quantity of stock in another company handling railroad couplers, which they described as being much better. He delivered to them the stock in the Imperial company and a check for $750, but received neither stock nor money in return. On the 8th of January, 1929, these two men returned and succeeded in obtaining from Hutson the balance of his Imperial stock, both preferred and common, for the promise of another large block of the coupler company stock and $25,000 to be paid in cash, but was not paid and coupler stock not delivered, and no payment of either cash items has since been made nor coupler stock furnished. Platt came back to Arkansas City very shortly after this second assignment was effected, saying he had been sent by the company. In a conference with the mayor of the city, a banker and members of the Hutson family, he advised sending a wire to the Kansas City office to stop the transfer. This was done, and attorney Templar, now but not then guardian, went to Kansas City to stop the transfer and had conferences with John E. Horn, one of the trustees of the Imperial Royalties Com-

pany, and others. An action was commenced in Missouri courts to enjoin the transfer, but was on February 2, 1929, dismissed for want of an injunction bond. Another action was commenced in Cowley county for damages against an Oklahoma company which claimed to have purchased the stock, but was dismissed without service. On February 6, 1929, four days after the injunction suit was dismissed, the defendant company transferred the stock to Mary E. Harbaugh at the request of A. J. McMahan & Company, of Oklahoma City, Okla.

The testimony of plaintiff Templar tends to show conferences and other communications with John E. Horn and defendants' attorney as to Hutson being incompetent, and the procuring of the stock from him by Hamm and Calhoun, and insisting upon protection of his ward by not transferring the stock, and warning them that he would hold the defendant company liable if it transferred the stock.

The testimony of the defendant company tended to show it had no acquaintance with or knowledge of either Hamm or Calhoun, and knew nothing of the stock being procured from Hutson until it reached the office from the company in Oklahoma City with the request for it to be transferred; that attorneys for plaintiff had not informed the trustee or attorney for the company as to the incompetency of Hutson, nor warned them against transferring the stock, but on the contrary had in effect consented that it might be transferred.

There was no direct testimony to dispute that furnished by the plaintiff concerning the transactions at Arkansas City about getting the stock from Hutson, but as to the conferences at Kansas City and the communications with parties there the conflict in the evidence is very great.

The first admission of evidence assigned as error by the appellant in its brief is that of the wife and daughters of Hutson as to what was said by Calhoun and Hamm to Hutson on the occasions of their visits at the home of Hutson, one statement in particular where one of them stated that Calhoun had said the Imperial Royalties Company had sent him. The objection is that such was improper to prove agency, citing numerous authorities, and further that no attempt was made to show that Hamm was at that time acting as agent for the defendant company. The objection would be good if the purpose was to establish agency, but such was not a

necessary part of the proof. In a conspiracy, if one is established, parties thereto may be bound by the acts and words of others participating who may not be agents. Such evidence was not inadmissible to prove a conspiracy as alleged.

The next admission of evidence complained of was an authenticated copy of a decree of the court of chancery of the state of Delaware, enjoining and restraining the General Railroad Coupler Corporation, issued October 27, 1928, from selling or disposing of any of its stock. This might surely tend to prove the allegation of the petition that the coupler stock was of no value. It is urged that such evidence was incompetent and prejudicial unless knowledge of the order was first brought home to the defendant. That rule, we fear, would exclude a large part of evidence generally used to establish fraud. A party attempting to defraud another may know the property he offers in exchange is worthless without knowing of all court orders or resolutions that help to get it into that condition.

The next objectionable evidence is a check for $340 given Platt by Hutson, dated December 5, 1928, and indorsed to the Imperial Finance Company, the objection being that there was no connection shown between the Imperial Royalties Company and the Imperial Finance Company. The objection is not well taken. The Imperial Finance Company may not have been connected up with the defendant, but Platt was.

The next evidence urged as inadmissible was an authenticated copy of the record of indictment and conviction in the United States district court of the western district of Missouri of John E. Horn, E. S. Horn and others for the offense of using the United States mails to promote and sell the stock of a certain mining corporation by using false and fraudulent representations. Both the Horns, trustees of the defendant company, testified in the case, being called by the defendant company. John E. Horn was later called by plaintiff to testify as to a matter objected to as not proper cross-examination, and the record shows that when objection was made to this evidence the court indicated its doubt because John E. Horn had been a witness called by plaintiff, and when attorney for plaintiff stated he only wished to use it as to E. S. Horn the court overruled the objection and admitted it. The overruling, counsel mentions, is as to the concluding suggestion that the court admonish the jury of its limitations. A special admonition to a jury, after a

definite limitation has been imposed, is at the discretion of the court. Its entry can mean nothing here after a definite ruling limiting its application to the other witness. It is further urged that this evidence could not affect the credibility of the witness E. S. Horn, as there was no evidence offered by plaintiff contradicting the testimony of this witness, which was that he had no knowledge of any conspiracy or of any attempt of the company to trade Hutson out of his stock in the company. His testimony went a little farther and to the effect that he did not know anything about this case except what had been said in these suits and in the testimony here to-day (apparently date of taking depositions, April 29, 1930, as shown by transcript).

A statement of a witness can be disproved in many other ways than by producing a witness who can testify to something directly to the contrary, especially where circumstantial evidence may be used. This evidence was not for impeachment.

"For the purpose of affecting the credibility of a witness produced by the plaintiffs, it is competent for the defendants to introduce an authenticated record showing a conviction for felony of a person of the same name as the witness, without other proof that the person convicted was the same one who testified as a witness in the case." (*Bayha v. Mumford*, 58 Kan. 445, syl. ¶ 1, 49 Pac. 601.)

Serious objection is made against the effort of plaintiff, as shown by the testimony of local officers of Cowley county, to have Calhoun arrested for his part in depriving Hutson of his stock in the defendant company, also in cross-examining John E. Horn about receiving a letter from Platt. We see nothing wrong as to testimony along these lines. The record shows John E. Horn was made a witness of the plaintiff for the purpose of interrogating him as to the value of the stock of the defendant company after an objection as to its not being proper cross-examination had been overruled a few times, so that all such examination can be considered as being produced in chief by plaintiff instead of cross-examination, although out of order.

Another objection which was overruled was to some evidence that was strictly speaking hearsay, but after first reciting such evidence the witness Templar testified that he had gotten the name of this girl in Oklahoma to whom the stock was to be assigned from Mr. Horn, and after talking with her over the telephone he told Mr. Horn the substance of the conversation and repeated it in substance. It was perfectly proper for him to testify as to what he told Mr.

Horn as to his conversation over the telephone, although it was improper to simply relate it as his conversation with Miss Harbaugh.

Appellant especially assigns error in the admission of the testimony of the witness Templar as to his conversations with John E. Horn, with R. R. Brewster and with Captain Rhodes, all witnesses for the defendant; also to the introduction in evidence of exhibit A, attached to the petition, giving the terms of the trust agreement of defendant company and a copy of the order of the probate court finding Hutson to be an incompetent, and also a copy of a telegram sent the defendant company warning it against making the transfer before it was made. We have made mention of each of these items because the error has been so earnestly urged, but we are unable to find in any of these admissions any substantial error.

The next point urged is that the court erred in refusing to grant the motion of the defendant company to set aside the verdict of the jury and remand the case to the federal court after the verdict rendered by the jury showed no judgment against defendant Hamm. The case had, on application of the Imperial Royalties Company, upon filing of answer, been removed to the federal court and had been remanded by that court, and now since defendant Hamm is not held by the jury as a joint tortfeasor, the allegation of the answer is now renewed, that the making of him a defendant in the first place was not in good faith and the verdict should not stand. It is contended by the appellee that he at no time and in no way consented to the result as to defendant Hamm and he still thinks and believes he was entitled to a finding and verdict against Hamm the same as against the Imperial company. A mere failure to obtain a verdict against a particular defendant residing in the county where the action was brought does not in itself show lack of good faith in bringing the case there and joining the local resident as a defendant, nor indicate a fraudulent joinder.

"Where the injured employee may proceed jointly or severally against the nonresident railway company and the resident engineer liable for the injury, and where he elects in good faith to proceed against them jointly, the action does not become a separable controversy for the purpose of removal because the liability of one of the defendants arises under the statute and the other under the common law, nor because different lines of proof may be necessary to establish the negligence of each, nor yet because the plaintiff may have misconceived his right of action or may be unable ultimately to sustain it.

"Since the plaintiff had the legal right to sue the tort-feasors jointly for the wrong done, the allegation that the resident and nonresident tort-feasors were sued together for the purpose of preventing a removal of the case to the fed-

eral court does not of itself state a fraudulent joinder." (*Dowell v. Railway Co.*, 83 Kan. 562, syl. ¶¶ 2, 3, 112 Pac. 136.)

"A suit may become removable upon a discontinuance or dismissal as to the resident defendant or defendants, provided such discontinuance or dismissal is the voluntary act of the plaintiff, and not adverse to him and without his consent; and failure of the plaintiff to resist the application for nonsuit or dismissal does not constitute it a voluntary one in the sense here intended." (1 Cyc. Fed. Proc. 946.)

"This was a ruling on the merits, and not a ruling on the question of jurisdiction. It was adverse to plaintiff, and without his assent, and the trial court rightly held that it did not operate to make the cause then removable and thereby to enable the other defendants to prevent plaintiff from taking a verdict against them." (*Whitcomb v. Smithson*, 175 U. S. 635, 638.)

"Where plaintiff in good faith insists on the joint liability of all the defendants until the close of the trial, the dismissal of the complaint on the merits as to the defendants who are citizens of plaintiff's state does not operate to make the cause then removable as to nonresident defendants and to prevent the plaintiff from taking a verdict against the defendants who might have removed the cause had they been sued alone, or if there had originally been a separable controversy as to them." (*Lathrop, Shea & Co. v. Interior Constr'n Co.*, 215 U. S. 246, syl.)

The demurrer to the evidence of plaintiff, we think, was properly overruled. There was certainly sufficient evidence introduced by the plaintiff to take the case to the jury on the question of making the transfer of the stock with knowledge of the fraud, even if it might not have been sufficient on the ground of conspiracy.

Appellant insists there was error in the refusal of the trial court to give the jury a peremptory instruction in favor of the defendant company, and also in overruling defendant's motion for judgment, notwithstanding the general verdict and the answers to the special questions. Although there was one answer that was not helpful in not naming the particular individual, yet the general verdict includes whatever elements there may be lacking in the answers, unless there are answers inconsistent with other answers or the general verdict, which is not the case here. There may not have been specific evidence to make it possible to give a definite answer to this question. None was pointed out to us; neither is it absolutely essential that the name of a definite individual be given as among its agents and representatives. An earlier answer does give the names of the trustees in response to a very similar question.

The court correctly informed the jury that conspiracy as well as fraud may be proved by circumstantial evidence. While direct evidence may not be strong or complete in itself, yet when coupled

and supplemented with circumstantial evidence it may be all that is necessary to support a proposition. In this connection counsel for appellant cite *Nolan v. Robertson*, 131 Kan. 333, 291 Pac. 750; *Powers v. Pacific Diesel Engine Co.*, 206 Cal. 334; and *National Safe Deposit Co. v. Hibbs*, 229 U. S. 391. The first was an action by the former owner of stock to rescind a contract consummated by fraud on him, and was brought after the stock had passed into the hands of an innocent holder. It was an injunction action and the plaintiff did not labor under any mental and physical handicap as the owner did in this action. Both the other cases were cases in equity and in each of them specific exception is made where the stock was obtained by theft, which is in effect the way this stock was obtained because of the owner's condition of mind and body at the time the stock was taken from him. The very statement of the fact of an old man turning over to an entire stranger, although accompanied by a neighbor and friend, almost his entire accumulations of a lifetime for a mere promise of the stranger to pay him $25,000 in cash, without anything except the oral promise and in face of the fact that the same party had neglected for three weeks to comply with a former similar promise to pay $4,000 in cash, is substantially equivalent in effect to a theft, as it shows the owner was incapable of giving any legal assent.

One of the circumstances urged as showing the helpful attitude of the defendant and against a conspiracy was the fact that Platt was sent by the company to see Hutson as soon as the second bunch of certificates came in to be transferred. He recommended wiring the company to stop the transfer. On doing so the company urged the attorney to come to Kansas City, Mo. When the attorney arrived and explained the situation the trustee advised the bringing of an injunction action against the company there in Missouri, and when this was done by the attorney further friendly attitude was manifested for a continuance and for nominal bond, all of which strongly repels the theory of the plaintiff that the company was a party to the conspiracy alleged, in spite of the evidence of such conspiracy on the part of others. But the jury may have considered, in connection with these circumstances, the attitude and conduct of the defendant company and its representatives after the dismissal of the Missouri injunction action. This is the evidence which we mentioned above as being very conflicting, and it was for the jury to determine to which side to give the credit. The plaintiff's side of the evidence shows that after the dismissal of this injunction

action this friendly, helpful attitude was completely changed, and it has since been maintained by the defendant company that the bringing and conclusion of that injunction action in Missouri is a complete bar to this action. So the jury may have inferred from these extreme attitudes that the earlier was for the sole purpose of accomplishing the latter and thereby possibly defeating any subsequent action that might be brought to recover against the company.

The law point as to this action being barred by the result of the injunction action is strongly urged in this appeal, and although we think it is not sound the facts and circumstances showing the changed attitude of the defendant company were perfectly proper to be considered by the jury in reaching its determination as to a conspiracy and fraud, as submitted to it by the court.

We think there was sufficient evidence to support the verdict of the jury and to fully justify the trial court in overruling the motions of defendant company for a peremptory instruction and for judgment notwithstanding the verdict and answers.

"The evidence held to support a finding of a conspiracy on the part of the defendants to defraud the plaintiff of his land by inducing him to exchange it for a worthless deed." (*Tatlow v. Bacon,* 95 Kan. 695, syl. ¶ 1, 149 Pac. 745.)

"Under a contract of insurance issued to protect a dealer in automobiles against 'theft, robbery or pilferage,' the act of a swindler who deprived the insured of an automobile by means of a preconceived plan which involved impersonation, misrepresentation and fraud was a species of theft for which the insurance company was liable." (*Motor Co. v. Insurance Co.,* 111 Kan. 225, syl., 207 Pac. 205.)

"A corporation is in a sense a trustee for its stockholders for the purpose of protecting their shares from unauthorized transfers, and to this end it is bound to use reasonable care and diligence, and consequently is responsible to a stockholder for the loss or injuries sustained by the negligence or misconduct of its officers and agents in this regard." (14 C. J. 772. See, also, *Lilley v. Oil and Refining Co.,* 108 Kan. 686, 197 Pac. 201; and 6 Fletcher Cyclopedia Corporations, § 3830.)

Another point is that this action is barred by the fact that an action for damages had previously been brought against McMahan & Company and dismissed, because thereby the plaintiff had made an election of remedies and should not be permitted to make another election. The election, if such it was, was not of remedies but of parties defendant. It was not an action to rescind and recover the stock, but for recovery of the value thereof as the record indicates, which is the same kind of a remedy as in this case.

Appellant contends that the court erred in giving the third, fourth, fifth and sixth instructions and in refusing to give the instructions requested by defendant company. Aside from the use of a word in one of the instructions which was not well chosen, but by a restatement of the proposition in another way was overcome, the position of the defendant company is that the instructions given were not confined to the issues as raised by the pleadings, and all of its requested instructions were along the theory that there was no issue formed by the pleadings except that of a conspiracy. The instructions given recognized an issue as to the defendant company not exercising reasonable care in protecting its stockholder and transferring the stock after it had knowledge of the fraudulent obtaining of the stock. This was surely within the pleadings, which not only alleged conspiracy but also participating in a fraud by accomplishing and completing it after having full knowledge of the fraud perpetrated by others. The following is a part of the nineteenth paragraph of the petition making such an allegation:

". . . with full knowledge that said certificates had been obtained from said Hutson by fraud and misrepresentations as above set forth, and of the mental incapacity of the said Hutson as above set forth, and for the purpose of fully perpetrating, carrying out, accomplishing and completing said fraud and divesting said Hutson of the legal and record title to said shares, the said Imperial Royalties Company and the trustees thereof, at the request of the other defendants and for said purposes, on the —— day of July, 1929, canceled said certificates . . ."

We think the pleadings were broad enough to include a fraudulent transaction participated in by the defendant company with full knowledge of the fraud and in doing so consummated or completed the fraud, and this aside from and in addition to the allegations of conspiracy.

Another criticism is in the use of the word "negligence" in one of the instructions. If used alone it would not fully express the real situation here intended, but it was used in connection with the word "misconduct" in making the transfer after having knowledge of the fraudulent obtaining of the stock. There could, we think, be no danger of the jury thinking of the case on that account as a negligence case, as is insisted by appellant.

We find no error in overruling the motion to set aside the answers to special questions, nor in overruling the motion for a new trial.

The judgment is affirmed.