No. 30,173.

G. C. HUTSON, an Incompetent, by GEORGE TEMPLAR, His duly appointed, qualified and acting Guardian, *Appellee,* v. (IMPERIAL ROYALTIES COMPANY, Common-law or Express Trust; JOHN E. HORN, E. S. HORN and J. O. BLAND, Trustees thereof, and W. R. HAMM and JOHN RANDOLPH CALHOUN, *Defendants*), IMPERIAL ROYALTIES COMPANY, *Appellant.*

(13 P. 2d 298.)

Opinion on rehearing filed July 9, 1932. (For original opinion of affirmance see 134 Kan. 378, 5 P. 2d 825.)

*James McDermott, Richard B. McDermott,* both of Winfield, *Bennett R. Wheeler, S. M. Brewster, John L. Hunt, Virgil V. Scholes, Margaret Mc-Gurnaghan,* all of Topeka, *John F. Rhodes* and *R. R. Brewster,* both of Kansas City, Mo., for the appellant.

*O. Renn* and *George Templar,* both of Arkansas City, for the appellee; *W. L. Cunningham,* of Arkansas City, of counsel.

The opinion of the court was delivered by

HUTCHISON, J.: This is a rehearing granted in the case of *Hutson v. Imperial Royalties Co.,* decided December 12, 1931, and reported in 134 Kan. 378, 5 P. 2d 825.

It has been exhaustively rebriefed and forcibly reargued. Perhaps some of the many intricate questions involved were not as fully covered by and discussed in the opinion as they should have been. One of these is the very nature and character of the cause of action itself on which the counsel seriously differ. Appellant insists that the cause of action is founded upon an alleged conspiracy to cheat and defraud Hutson of his stock, and that no other or different cause of action was tendered by the petition, maintaining that conspiracy is a necessary element of the one and only cause of action pleaded. We are familiar with the fact that there is a federal statute making conspiracy a civil liability; other instances are noted where an individual could not alone be held liable, and in 12 C. J., at page 585, "actions of conspiracy" are explained and treated, but the petition in the instant case is one, as appellant states, founded upon an alleged conspiracy to cheat and defraud, but not, as it claims, excluding every other cause of action. We attempted to say in the

original opinion that the element of conspiracy might be eliminated, or not established by the evidence, and we would still have a cause of action to cheat and defraud. In other words, if the plaintiff should entirely fail in his proof to establish a conspiracy, he could recover on account of the fraud and misconduct of the defendant as alleged in the petition.

"As a general rule averment and proof that the acts were done in pursuance of a conspiracy do not change the nature of the action or add anything to its legal force and effect. If a plaintiff fails in the proof of a. conspiracy or concerted design, he may yet recover damages against one or more of defendants shown to be guilty of the tort without such agreement. The charge of conspiracy where unsupported by evidence will be considered mere surplusage not necessary to be proved to support the action." (12 C. J. 584.)

"The gist of the action is the damage and not the conspiracy, and the damage must appear. to have been the natural and proximate consequence of defendant's act." (12 C. J. 581.)

"The better view, however, is that the damage sustained, and not the conspiracy, is the gist of the action. The combination may be of no consequence except as bearing upon rules of evidence or the persons liable." (5 R. C. L. 1091.)

"Wrongful acts or omissions in pursuance of a fraudulent conspiracy, and not the conspiracy itself, constitute a cause of action; and the statute of limitations begins to run from the time of such acts or omissions, if then known to the injured party, and not from the time of his discovery of such conspiracy." (*Rizer v. Geary County*, 58 Kan. 114, syl. ¶ 1, 48 Pac. 568.)

"Counsel for defendants make the point that a conspiracy among the appellees to defraud the corporation would not give rise to a civil action. Quite correct. It is not the conspiracy itself, but the wrongful acts or omissions in pursuance of the conspiracy, which constitute the cause of action." (*Federal Reserve Life Ins. Co. v. Gregory*, 132 Kan. 129, 132, 294 Pac. 859.)

If for the reason of failure to establish conspiracy those allegations of the petition should be eliminated as surplusage, the remaining cause of action would be for a recovery on account of fraud and misconduct as alleged in the petition and not for negligence as suggested. The nineteenth paragraph of the petition fully alleges a cause of action for fraud and misconduct regardless of the conspiracy. A portion of it is in substance as follows: That for the purpose of further carrying out, perpetrating.and accomplishing said fraud and conspiracy and to defraud said Hutson the said Imperial Royalties Company (and other defendants), and each of them, with full knowledge that said certificates had been obtained from said Hutson by fraud and misrepresentations and for the purpose of fully perpetrating, carrying out, accomplishing and completing said

fraud and divesting said Hutson of the legal and record title to said shares, the said Imperial Royalties Company and the trustees thereof, at the request of the other defendants and for said purposes, canceled said certificates, and that by reason thereof the said Hutson and his guardian have wholly lost said shares, the beneficial use thereof, to their damage.

It is said the jury found conspiracy and therefore no other cause of action could have prevailed by its verdict. The general verdict was in favor of the plaintiff, which includes all the necessary elements to sustain it, and the special finding of conspiracy is not inconsistent with a general verdict for damages for fraud and misconduct if the conspiracy element is not supported by the evidence. The attempted support in the evidence of the conspiracy feature would, like the allegations thereof, be "mere surplusage," as stated in the authorities above cited. The trial court carried out this recognized practice by instructing the jury along this line in instruction No. 3, in addition to full instructions as to conspiracy. It is as follows:

"While the plaintiff charges the defendants with a conspiracy to defraud him out of his certificates or shares, proof that the defendant the Imperial Royalties Company or its trustees was a party to the conspiracy prior to the time of the obtaining of the property in controversy by the defendants Hamm and Calhoun by fraud, if you are satisfied that it was so obtained, is not necessarily essential to the plaintiff's right to recovery against the Imperial Royalties Company. If you find from the evidence and by a preponderance thereof that the plaintiff was deprived of his property as alleged either in his first or second cause of action by the fraud practiced by the defendants Calhoun and Hamm, either or both of them, and that the Imperial Royalties Company before it transferred the stock in controversy had actual knowledge of the fraud and deception practiced by Calhoun and Hamm, or either or both, in obtaining such property, or if it had such actual knowledge of the fraud practiced, if you find that such fraud was practiced or actual knowledge of sufficient facts to put a reasonable and prudent person upon inquiry, which reasonable inquiry should have disclosed the fraud, and if you further find that the defendant Imperial Royalties Company after having such knowledge aided and abetted Calhoun and Hamm, either or both, in consummating and completing the fraud by causing the certificates of shares to be canceled and new certificates of shares to be issued to other parties, then they each and all of them so aiding would be equally liable with the party or parties who actually perpetrated the fraud."

Appellant treats this as an instruction on negligence and not on fraud. We think it is one on fraud, and in line with the authorities cited by appellant concede that it would be error to substitute, as a

test of defendant's liability, negligence instead of a purpose to deceive. Appellant refers to the inaccurate use of the word negligence in instruction No. 5, but, as stated in the original opinion, it was directly coupled with the word misconduct and there could be no reasonable ground for the jury being led to think of it as a negligence case. Besides, when read with the other instructions, full of references to fraud, deceit, aiding in the perpetration of fraud and the like, no one could be misled thereby. Neither was it the intention in the original opinion, in the consideration of these instructions and the criticism made of them by appellant, to intimate or hold that negligence as a cause of action was included in this case. It was not. Unless fraud of the character alleged in the petition was established, the plaintiff has no right to recover in this action.

It may be appropriately asked why this effort to discriminate between an action for fraud and one of conspiracy to cheat and defraud, especially when the jury has found generally for the plaintiff, which will cover both, and has also answered special questions finding conspiracy. The answer is, because of the points of distinction raised by counsel as to the pleadings and the instructions as above noted, and also because of the urgent and insistent claim of appellant that no conspiracy has been proved and the special findings to that effect are without support.

Appellant particularly stresses the point properly raised on the trial concerning the admissibility of the testimony of Marie Hutson as to Calhoun stating to her father when he first visited him that the Imperial Royalties Company had sent him, citing numerous authorities to the effect that declarations of one conspirator to another are not competent evidence to establish the connection of the third person with the conspiracy and that the existence of the conspiracy cannot be established against an alleged conspirator by evidence of the acts or declarations of his alleged coconspirator done or made in his absence. With this principle of law we are thoroughly in accord, and such evidence was inadmissible to prove or establish a conspiracy, although it is admissible for other purposes. In the original opinion, on page 383, in discussing the admissibility of this evidence for the purpose of proving agency, it was said: .

"The objection would be good if the purpose was to establish agency, but such was not a necessary part of the proof. In a conspiracy, if one is established, parties thereto may be bound by the acts and words of others partici-

pating who may not be agents. Such evidence was not inadmissible to prove a conspiracy as alleged."

The last sentence in that connection was a mistake, the writer evidently having in mind particularly the question of agency at the time. That sentence should have read, "Such evidence was inadmissible to prove a conspiracy as alleged, but was admissible for other purposes in the case if a conspiracy was established." It tended to show fraud and the relationship of the parties mentioned in the statement to the fraud if a conspiracy was established, but plainly and positively should not be considered and was not proper to prove or establish a conspiracy. Although this evidence may be hearsay and not strictly admissible to prove the existence of a conspiracy, yet it is a part of the acts, words and declarations of one of the alleged conspirators which is always admissible when the conspiracy is established.

"Error based on the admission of hearsay testimony considered and held that the testimony was competent under the rule concerning the admissibility of evidence of the acts and words of one of several conspirators touching a detail of such conspiracy." (*Minch v. Winters*, 122 Kan. 533, syl. ¶ 5, 253 Pac. 578.)

"The conspiracy being established, the acts and declarations of one conspirator, during the continuance of the conspiracy, pursuant to and in furtherance of it, are admissible against his coconspirators." (5 R. C. L. 1104.)

"When the existence of the conspiracy and the connection of the defendant therewith is established by independent evidence, he is bound by the acts and declarations of his coconspirators." (*U. S. v. Goldberg*, 7 Biss. 175.)

"The rule of responsibility for the acts of coconspirators includes acts done before the defendant joined the conspiracy as well as the acts subsequent to his participation. Whether or not the act done was in furtherance of the common design, or whether it was a natural and probable consequence flowing from the execution of the common design, is always a question for the jury." (5 R. C. L. 1064.)

Complaint is made that this was substantially the first evidence introduced by the plaintiff and therefore at that time no conspiracy had been established. That is a matter largely in the discretion of the trial court, and usually wide latitude is allowed in the order of proof and its competency depends upon the sufficiency of the proof that may follow.

"The order in which proof of a conspiracy is received rests to a large extent in the discretion of the court, and in this case it is held that defendants were not prejudiced by the admission in evidence of declarations made by one of the defendants before proof of the conspiracy, it being followed up by suffi-

cient evidence to establish the existence of the conspiracy as alleged." (*Drysdale v. Wetz,* 102 Kan. 680, syl. ¶ 1, 171 Pac. 653.)

But appellant claims this was the sole and the only proof, if such it was, that attempted to establish a conspiracy between the Imperial Royalties Company and any other company or person, and for that additional reason the evidence was inadmissible. Because of the very nature and character of a conspiracy it is seldom possible to prove it by direct evidence, and it is nearly always necessary to establish it by circumstantial evidence, which is universally recognized as the proper means of proof.

"It is well settled by the authorities that conspiracy, when charged either in a civil or a criminal case, may be proved by circumstantial evidence. It is proper to prove the charge by direct evidence, but as the direct evidence is ordinarily in the possession and control of the alleged conspirators, frequently the opposing party cannot obtain it. Hence, in actual practice, it is usually proved by circumstantial evidence, and where the charge is made its tendency is to open rather a wide field of inquiry." (*Rickel v. Coöperative Exchange,* 113 Kan. 592, 600, 215 Pac. 1015.)

"The combination or conspiracy may be proved by evincing a concurrent knowledge and approbation in the persons conspiring, of each other's acts; and it is usually done by proof of the separate acts of several persons concentrating in the same purpose or particular object. . . . For the purpose of showing such connection, therefore, circumstantial evidence suffices. The plaintiff may either prove the conspiracy which renders the acts of the conspirators admissible in evidence, or he may prove the acts of the different persons, and thus prove the conspiracy." (5 R. C. L. 1103, 1104.)

In the original opinion the facts and circumstances of the case were set out at considerable length, and comment was made on some of the circumstances with the conclusion that in our judgment there was sufficient evidence to support the verdict and findings of the jury. We are still of the same opinion.

The errors assigned in eight other instances in the admission of evidence and the prejudice claimed by reason of improper remarks made by the attorney for the plaintiff in the opening statement, again fully considered but without reaching a conclusion that the determination reached thereon in the original opinion should be changed.

One point is particularly stressed because there is no showing of financial gain or profit to the Imperial Royalties Company either in the conspiracy or in defrauding the plaintiff. It is said in 12 C. J. 612:

"A conspirator is none the less liable because he expected to derive no benefit from the wrong or in fact received no benefit therefrom."

Another point with reference to the introduction of evidence was concerning the introduction of an indictment to affect the credibility of a witness, which if offered alone would not have been proper for that purpose because it carries with it the presumption of innocence, but if offered in connection with the judgment of conviction, and both were here introduced together, the former to explain the latter, it is admissible.

The other points raised on the rehearing having relation to the ownership of the stock by McMahon & Company are, as expressed by the appellant, as follows:

"If Imperial Royalties Company and its trustees were not parties to the conspiracy at the time Calhoun obtained Hutson's stock, and at the time it came into the possession of McMahon & Company they could not become parties to the conspiracy (already consummated) because yielding to the demands and threats of McMahon & Company they transferred the stock in question.

"If Imperial Royalties Company was not a party to the conspiracy, and there was no showing that McMahon & Company were not innocent purchasers, the transfer of the stock was proper, and in any event could not be the proximate cause of plaintiff's damages and create liability upon the part of Imperial Royalties Company."

It is argued by appellant that if the Imperial Royalties Company was not a party to a conspiracy to cheat and defraud Hutson prior to the parting with the stock by Hutson, that it cannot be held liable upon the theory that it later became a party to that conspiracy because it transferred the stock after it had knowledge of the fraud practiced by Calhoun on Hutson, and further that there is no evidence that McMahon & Company did not in good faith purchase the stock for a valuable consideration, and further that if it was a purchaser in good faith for valuable consideration the Imperial Royalties Company had no right to refuse such transfer, and if it did, it would be liable in damages. We do not think any of these points are well taken. The rule does not seem to require a conspirator to be such during the entire conspiracy, and as to McMahon & Company being an innocent purchaser for value, this is generally a defense and does not seem to have been made an issue in this case.

"To render a person civilly liable for injuries resulting from a conspiracy of which he was a member, it is not necessary that he should have joined the

conspiracy at the time of its inception. Everyone who enters into such a common design is in law a party to every act previously or subsequently done by any of the others in pursuance of it." (12 C. J. 612.)

"One who buys or contracts to buy stock in a corporation does not take it freed of its infirmities according to the rules of commercial paper acquired in due course; he merely takes such legal and equitable rights in the stock as his vendor has to bestow; and although the buyer may be ignorant of the, equities and burdens which inhere in the stock, his ignorance does not relieve the stock therefrom, nor enable him to acquire it discharged of any vice or defect which inheres in it." (*Lilley v. Oil and Refining Co.*, 108 Kan. 686, syl. ¶ 1, 197 Pac. 201. See, also, *Nolan v. Robertson*, 131 Kan. 333, 291 Pac. 750; 14 C. J. 784; and *Mitchell v. Beachy*, 104 Kan. 445, 179 Pac. 365.)

The most recent expression of this court on most of the questions here involved is found in the opinion in the case of *Beneke v. Bankers Mortgage Co.*, 135 Kan. 444, 10 P. 2d 825, where the petition alleged fraud and conspiracy to avoid the issuance of a certificate of stock to an aged stockholder who had assigned it in blank and delivered it to a girl in exchange for some absolutely worthless stock, and the company was promptly informed of the loss of the stock and was requested and urged not to transfer it on the books but to issue to him in lieu thereof another certificate. The following is a pertinent part of the opinion rendered in affirming the order of the trial court in overruling the demurrer to the petition:

"The corporation was bound to act in good faith toward him and, with safety to itself, was bound to aid him in protecting his interest. The petition discloses, however, that the attitude of the directors and managers of the company is one of antagonism toward a shareholder who was defrauded with their knowledge and assent, to further their ends. Incidentally, the company itself is benefited by retention and by lapse of declared dividends. The company could have protected the defrauded shareholder and itself. He was helpless for lack of information which the company, through its directors and managers, possessed. It is true, as defendants say, mere conspiracy is not actionable. Harmful consequence of conduct pursuant to conspiracy is actionable. But silence and inaction in aid of fraud are conduct as much as action and declaration to circumvent fraud are conduct. The fraud on the shareholder is admitted. There is no innocent holder of the original certificate. The company, in all fairness and good faith, owes it to the shareholder to do what it can to assist and to protect him, and collusion of the company's directors and managers to oppress the stockholder and keep him remediless, in effect makes them and the company parties to the fraud." (p. 445.)

We conclude as before that the judgment should be affirmed. It is so ordered.