No. 31,019.

JOHN BROOKS, *Appellant,* v. THE UNION NATIONAL BANK and RUSSELL POTTS, *Appellees.*

(20 P. 2d 830.)

Opinion filed April 8, 1933.

*W. H. Carpenter* and *W. R. Carpenter,* both of Marion, for the appellant.

*Dempster O. Potts, Dallas Potts, W. A. Ayres, Austin M. Cowan, C. A. Mc-Corkle, J. D. Fair, W. A. Kahrs* and *R. H. Nelson,* all of Wichita, for the appellees.

The opinion of the court was delivered by

SMITH, J.: This was an action for the possession of twenty-five shares of stock in the Kansas Power and Light Company. Judgment was for defendant. Plaintiff appeals.

Plaintiff owned twenty-five shares of stock in the Kansas Power and Light Company. A man giving his name as Conway advised plaintiff that he was the agent of Branch-Middlekauff Company, a reputable bond concern of Wichita. This was false. He did not represent Branch-Middlekauff, and this firm knew nothing of him. Conway made several trips to the home of plaintiff. On February 11 he persuaded plaintiff to indorse his stock in blank and deliver it to him. The deal was that Branch-Middlekauff were to get the plaintiff's stock and Branch-Middlekauff were to either pay plaintiff the money for the stock or give him General Motors stock for it within three days. On February 12 a man by the name of Dobbins offered plaintiff's stock to Mr. Potts at the defendant bank. At this time Mr. Potts refused to buy the stock unless it bore a notary seal. Within a short time it was presented with a notary seal on it. Potts paid Dobbins $2,000 for the stock. This was about what it was worth. On the same day the stock was sold to Loveland-Reynolds, a brokerage firm. When plaintiff called on Branch-Middlekauff for his General Motors stock he learned for the first time that Conway had no connection whatever with that firm and it knew nothing of him or the deal with plaintiff. Immediately steps were taken to stop the transfer of the stock on the books of the company. As soon as this was done Loveland-Reynolds returned the stock to the bank. The bank then paid Loveland-Reynolds and still holds the stock. Plaintiff demanded the stock of the bank and was refused. This suit followed.

The evidence of plaintiff was about as given here. Defendant demurred to the evidence. The demurrer was sustained. This appeal is from that order.

The theory of plaintiff is that the transaction between plaintiff and Conway is the same as though Conway had stolen the stock from plaintiff; that he, on that account, acquired no title whatever to the stock and hence no subsequent purchaser could obtain any title whatever from him. Able counsel cite authorities in their brief to sustain this rule. These cases relate, however, to tangible personal property and not to certificates of stock. The leading case on this subject is *National Safe Deposit Co. v. Hibbs,* 229 U. S. 391. In that case a trusted bank official took stock certificates which had been intrusted to him, indorsed them in blank and sold them for his own benefit. In an action the bank was held liable. The basis for the doctrine fixing liability is that where one of two innocent persons must suffer by the acts of a third, he who has enabled such third person to occasion the loss must sustain it. It is well known that while stock certificates are not negotiable paper, they circulate in the trade and commerce of the country about as freely as though they were negotiable. They are framed with that idea in mind. Possession alone of a stock certificate would not be sufficient indicia of title to enable one who procured the certificate by fraud to pass title to an innocent purchaser, but possession, coupled with the fact that the certificate was indorsed in blank, is sufficient. In the Hibbs case, the negligence of the bank in trusting the employee with the indorsed certificates was the thing that caused the two innocent persons to suffer. In the case under consideration the negligence of plaintiff in delivering the certificate to a stranger and indorsing it in blank was the thing that caused the loss to plaintiff and the bank. In such a case, following the rule laid down in the Hibbs case and in *Nolan v. Robertson,* 131 Kan. 333, 291 Pac. 750, the loss should fall on the person whose negligence caused the loss. That person is plaintiff. Counsel attempt to distinguish this case from the cases just cited by pointing out that Conway told plaintiff he was agent for Branch-Middlekauff and plaintiff thought all the time that he was dealing with Branch-Middlekauff. We cannot see how this changes the situation. It is just a variation in the scheme by which plaintiff was swindled. It does not have any effect on the relation between plaintiff and innocent purchasers of the certificate. Counsel cite the case of *Hutson v. Imperial Royalties Co.,* 134 Kan. 378, 5 P. 2d 825. That case was to recover for the value of stock which was fraudulently taken away from an old

man who, the record showed, was laboring under a physical and mental handicap. The opinion treats the transaction as a species of theft, but the mental handicap was held by the court to be so great that he was not capable of performing any act which would bind him. There is no evidence of a mental handicap in this case.

The plaintiff argues further that his evidence proved by circumstances that Potts, the agent of the bank, had notice before he purchased the stock that the certificate had been obtained in a fraudulent manner. He points out that Potts compelled Dobbins to cause a notary seal to be placed on the certificate and that he caused Dobbins to put his name on it. Another circumstance pointed out is the fact that the same day the certificate was sold to Loveland-Reynolds and indorsed upon it "Indorsement guaranteed, Union National Bank, Wilbut Harrison, cashier," and that as soon as the transaction was questioned, the stock was taken back by the bank.

Plaintiff urges that the inference to be drawn from these circumstances is that all parties had guilty knowledge. The act of Potts in requiring the notary seal and the signature of Dobbins was only the natural act of a cautious dealer in stocks and bonds. The selling of the stock the same day was a regular transaction. The stock was sold for a profit. The idea of this type of business is quick sales and small profits. The act of the bank in taking back the stock was only the act of a reputable bank maintaining its standing with its customers. These circumstances, taken together, cannot be said to justify the inference that either Potts or the bank had notice of the fact that the stock had been obtained by fraud.

The judgment of the trial court is affirmed.